UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAMELA LINDA THOMAS,

                Plaintiff,

  -v-

MARJORIE SMITH, sued in her individual capacity,
and FAMILY SERVICES, INC.,

                Defendants.

Case No. 06-CV-164 (KMK)

ORDER

---

KENNETH M. KARAS, District Judge:

      Plaintiff Pamela Linda Thomas brings this action under 42 U.S.C. § 1983 ("Section 1983") for alleged violation of her rights under the First Amendment, and under New York Labor Law 201-d ("Section 201-d") for alleged wrongful employment termination. Plaintiff alleges that she was fired by her employer, Defendant Family Services, Inc. ("FSI"), as a result of the illegal coercion and/or encouragement of Defendant Marjorie Smith, an assistant district attorney for Dutchess County. According to Plaintiff, Defendant Smith was so outraged by comments made by Plaintiff at a community forum held in the Town of Beekman ("community forum") – in particular, Plaintiff's comments criticizing law enforcement efforts related to sex offenders and advocating the castration of sex offenders – that Defendant Smith actively encouraged FSI to terminate Plaintiff's employment.[1] Defendants, on the other hand, argue that Smith did not encourage Plaintiff's termination; rather, Plaintiff was fired by FSI for the

---

[1] Plaintiff said, among other things: "I hope none of you has to look into the eyes of a child who has been raped. We want that monster out of town. We have a lemon law on a car for crissakes, why does he still have his private parts?" (Pl.'s Rule 56.1 Reply ("Pl.'s 56.1 Stmt.") ¶ 29; Def. Smith's Statement Pursuant to Rule 56.1 ("Smith 56.1 Stmt.") ¶ 29.)

substance of the comments she made at the community form, and because Plaintiff represented herself as an employee of FSI while making those public comments.

Both Defendants moved for summary judgment.  Summary judgment is properly granted where a moving party shows that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Because there are disputed issues of fact material to Plaintiff's Section 1983 claim, but not Plaintiff's Section 201-d claim, Defendants' Motions are DENIED in part and GRANTED in part.

> I.  Plaintiff's Section 1983 Claim

Plaintiff's employment was terminated by FSI, a private entity.  The actions of private entities may be deemed "state action" for the purposes of Section 1983 analysis if those actions are "fairly attributable" to the state.  *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  To sustain a claim against a private entity, a plaintiff must demonstrate that "'the private entity acted in concert with the state actor to commit an unconstitutional act[,]'" *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)), thus behaving as if it were "an arm of the state," *Chan v. City of New York*, 1 F.3d 96, 106 (2d Cir. 1993).

There are two relevant tests for demonstrating whether a private actor may be deemed a state actor for the purpose of Section 1983 litigation.[2]  Under the more common test, the Court

---

[2]The nexus between private and state action can also be demonstrated "if the private entity has exercised powers that are "'traditionally the exclusive prerogative of the State.'" *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345,

asks whether the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum*, 457 U.S. at 1005; *see also Husain v. Springer*, 494 F.3d 108, 134 (2d Cir. 2007) ("'[T]he state must have exerted its coercive power over, or provided significant encouragement to, the defendant before the latter will be deemed a state actor . . . .'" (quoting *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir. 1996))). Alternatively, the Court may employ the "symbiotic relationship" or "close nexus test," which asks whether "[t]he State has so far insinuated itself into a position of interdependence with [the private actor] . . . that it must be recognized as a joint participant in the challenged activity." *Berweger v. County of Orange*, 121 F. Supp. 2d 334, 345 (S.D.N.Y. 2000) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)) (second alteration in original). The Court observes, however, that this latter test is not the favored means for establishing that a private decision constitutes state action.[3] The Court, however, need not pick the more appropriate test, as summary judgment is denied under either one.

As an initial matter, Plaintiff has raised an issue of fact with regard to whether Plaintiff identified herself to the audience as an employee of FSI. Plaintiff testified that she did not identify herself as an employee of FSI during her remarks to the community forum audience.

---

353 (1974)). Here, Plaintiff makes no claim that would implicate this test.

[3]This test, which emerged from the Supreme Court's decision in *Burton*, has been sharply narrowed over the years. Judge Korman, writing separately in *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007), questioned the continuing viability of the *Burton* test, quoting approvingly from a treatise which observed that, with the exception of a case dealing with racially-based preemptory challenges, the Supreme Court has "rejected every attempt to establish state action on the basis of *Burton*." *Id*. at 314 n.8 (Korman, J., concurring in part, dissenting in part) (quoting 1 Martin A. Schwartz, Section 1983 Litigation: Claims and Defenses § 5.13[A], at 5-90-5-91 (4th ed. 2003)).

3

This testimony is supported by Linda Vasquez, a community member who was sitting next to Plaintiff during the proceedings.  Defendants, on the other hand, present only the testimony of Defendant Smith, who is unequivocal in her assertion that Plaintiff announced her affiliation with FSI during her public remarks.  (Smith Dep. 46.)  Defendants do not, however, present any other testimony supporting Smith's version of events.  Thus, it is obvious that this is a contested issue of fact that can only be resolved by a jury.

Defendants argue, however, that whether Plaintiff announced her employment status to the community forum is irrelevant to Plaintiff's Section 1983 claim.  Instead, the key issue is whether FSI Vice President Joan Crawford terminated Plaintiff because of coercive pressure or significant encouragement by Defendant Smith, not whether Plaintiff did or did not identify herself to the crowd as an FSI employee.  In that regard, Defendants argue that Smith had nothing to do with Plaintiff's termination.  According to Defendants, Crawford fired Plaintiff because she believed in good faith that Plaintiff violated the policy of representing FSI without authorization; made comments that were inconsistent with the policy and philosophy of FSI; and exposed FSI to unfavorable attention in a local newspaper story.  (Crawford Dep. 6-7, 29.)  In Crawford's words, Plaintiff "did not understand the gravity of the comments or take any ownership that this was problematic; therefore, I could not be convinced that this would not happen again, that she would misrepresent the agency or the agency's views or philosophies." (*Id*. 31.)

Here, however, Plaintiff has also raised an issue of fact.  Although Defendants argue that Smith neither exercised coercive power nor provided significant encouragement to FSI in its decision to terminate Plaintiff, Plaintiff has produced sufficient evidence contradicting

Defendants' version of events to raise an issue of fact that must be resolved by a jury.

The record indicates that Plaintiff's remarks at the community forum had "ruffled some feathers" and made Smith quite upset. (Pl.'s 56.1 Stmt. ¶¶ 32-33; Bonura Dep. 79.) Smith was not only troubled by Plaintiff's cavalier "castration" comments, but also by Plaintiff's public questioning of Smith's effectiveness in addressing the harms caused by sexual assault. Plaintiff publicly stated, in part, "I hope none of you has to look into the eyes of a child who has been raped," which prompted Smith to respond to a local journalist: "There were some accusatory comments that the system was not dealing with the victims. I've been spending time with 5 year old rape victims since 1983." (Affirmation of Christopher D. Watkins, Ex. 9 (newspaper clipping of community forum).)

In their conversation following the forum – at which point Plaintiff says that Smith refused to shake Plaintiff's hand (Pl.'s Rule 56.1 Counter-Statement ("Pl.'s 56.1 Counter") ¶ 33) – Smith told Plaintiff that she was going to contact Plaintiff's trainer and supervisor, Whitney Bonura, ostensibly to complain about Plaintiff's remarks. (Pl.'s 56.1 Stmt. ¶ 33; Smith 56.1 Stmt. ¶ 33.) The next day, Smith in fact called Bonura and left a voice mail message describing what Plaintiff had done and said at the community forum. (Smith 56.1 Stmt. ¶ 37; Smith Dep. 53-55; Bonura Dep. 47.) Bonura forwarded this message to Crawford, who then returned Smith's call, leaving a message. (Smith 56.1 Stmt. ¶¶ 38, 43.) While Crawford admits to returning the call from Smith, she did not return a call she received from Pat Whelan, a Detective Sergeant in the Dutchess County Sheriff's Department.

Crawford insists that Smith's phone message – one of several she received that day regarding Plaintiff – had no particular influence on her decision to fire Plaintiff. (Crawford Dep.

5

44-49.) The complete record, however, indicates that the concerns of FSI's government allies may have played a significant role in FSI's decision. Bonura testified that she attended a Chiefs' Association Meeting two days after Plaintiff made her public comments, and one day before Plaintiff's termination, at which she discussed Plaintiff's comments with "law enforcement personnel" – a group which included Smith. (Bonura Dep. 71-75 (noting that Smith was in attendance and may have expressed concerns to Bonura, but that Bonura did not recall specifics).) Pat Whelan asked Bonura whether Plaintiff's comments were "really how [FSI] felt" about the issue of castration and the efficacy of law enforcement. (*Id*. 72.) According to Bonura, the law enforcement personnel believed that Plaintiff had been unjustly critical of the various institutional players present during the community forum. (*Id*. 71-75.) In particular, their collective impression was that Plaintiff believed that the police and district attorneys "weren't doing their job the best that they could" and that the authorities "had the ability to do more than they were doing." (*Id*. 75.) While Crawford testified that these sentiments did not play a role in Plaintiff's dismissal (Crawford Dep. 45-48), the notes taken by Bonura shortly after Bonura fired Plaintiff on Crawford's behalf hint at a different story. According to Bonura's notes, the panelists at the community forum – which included Smith – thought Plaintiff's conduct was "extremely inappropriate toward the panel," and "the allied professionals were offended . . . and feel they cannot work with [Plaintiff.]" (Affirmation of Christopher Watkins, Ex. 8 (notes of Whitney Bonura).) These "allied professionals," a group of individuals and agencies concerned with issues of sexual violence, worked with FSI under the aegis of the Dutchess County Sex Offender Management Project ("CSOM") (Pl.'s 56.1 Stmt. ¶ 15; Smith 56.1 Stmt. ¶ 15), and were represented at the community forum by, among others, Defendant

Smith.

It is not exactly clear what Bonura meant when she told Plaintiff that her firing was due, in some part, to the fact that the allied professionals could not work with her. However, given that Defendant Smith – a significant member of CSOM – was one of the individuals representing the allied professionals at the community forum, Bonura's notes indicate that Smith may have played a significant role in Plaintiff's termination. Therefore, because Plaintiff has presented sufficient evidence (albeit, barely) that Smith may have significantly encouraged, if not coerced, FSI to terminate Plaintiff (or that there was a close nexus between Smith and FSI), the Court is precluded from finding that no issue of fact exists in regard to FSI's motivation for firing Plaintiff. Accordingly, Defendants' Motions for Summary Judgment on Plaintiff's Section 1983 claims are DENIED.

## II. Plaintiff's Claim under New York State Labor Law § 201-d[4]

Plaintiff also makes a claim against FSI pursuant to Section 201-d. Section 201-d(2)(c) states in relevant part:

> Unless otherwise provided by law, it shall be unlawful for any employer . . . to discharge [an employee] from employment . . . because of . . . an individual's legal recreational activities outside work hours, off of the employer's premises and without use of the employer's equipment or other property.

Section 201-d(2)(c) is then qualified by the following language:

> The provisions of subdivision two of this section shall not be deemed to protect activity which [] creates a material conflict of interest related to the employer's trade secrets, proprietary

---

[4] Plaintiff's tortious interference with contract claim against Defendant Smith has been withdrawn. (Pl.'s 56.1 Stmt. ¶ 60.)

information or other proprietary or business interest.[5]

New York Labor Law § 201-d(3)(a).  In sum, to make a claim under Section 201-d, Plaintiff must establish:  (1) that her conduct at the community forum was a "recreational activity;" (2) that her conduct occurred "outside work hours;" (3) that she did not use any of her employer's property during the community forum; and (4) that her conduct did not "materially conflict" with FSI's business interests.

The evidence before the Court clearly demonstrates that Plaintiff's statements at the community forum materially conflicted with FSI's business interests.  FSI provides services to both the victims and perpetrators of sexual assault.  (Pl.'s 56.1 Stmt. ¶¶ 13-14; Smith 56.1 Stmt. ¶¶ 13-14.)  Plaintiff's public support of castration as a means for punishing sex offenders offended FSI's methods and philosophy, and exposed FSI to unfavorable attention in the local press.  (Crawford Dep. 6-7, 29.)  And, it is utterly irrelevant whether Plaintiff identified herself as affiliated with FSI during her public comments, as she admits to revealing her FSI affiliation in a smaller, but still public, gathering shortly after making her public comments.  Although Plaintiff argues that her mere *attendance* at the community forum did not create a material conflict (Pl.'s Mem. of Law in Opp'n to Defs.' Mots. for Summ. J. 18), Plaintiff presents no evidence rebutting FSI's demonstration that her *conduct* at that forum materially conflicted with FSI's business interests.[6]  Accordingly, FSI's Motion for Summary Judgment in regard to

---

[5]As the Parties agree, there is a dearth of case law interpreting Section 201-d.  Thus, the Court will apply the plain words of this provision.  *See Knight v. Comm'r of Internal Revenue*, 128 S. Ct. 782, 787 (2008) ("We start, as always, with the language of the statute." (internal quotation marks omitted)).

[6]Because the Court finds that Plaintiff's conduct at the community forum conflicted with FSI's business interests, the Court need not address the other necessary elements of Plaintiff's

Plaintiff's Section 201-d claim is GRANTED.

### III. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment on Plaintiff's Section 1983 claim is DENIED, and Defendant FSI's Motion for Summary Judgment on Plaintiff's Section 201-d claim is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions in this case. (Dkt. Nos. 15, 17.)

SO ORDERED.

Dated:  March 25, 2008
        White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

Section 201-d claim. However, the Court observes that even if Plaintiff's activity at the community forum did not "materially conflict" with her employer's business interests, Plaintiff's claim would still fail because the activity in question occurred while Plaintiff was "on-call" for FSI, thus falling within Plaintiff's working hours. *See* Section 201-d.

Service List:
Christopher D. Watkins, Esq.
Bergstein & Ullrich, LLP
15 Railroad Avenue
Chester, NY 10918
*Counsel for Plaintiffs*

David L. Posner, Esq.
McCabe & Mack LLP
63 Washington Street, P.O. Box 509
Poughkeepsie, NY 12602
Email: dposner@mccm.com
*Counsel for Defendant Marjorie Smith*

J. Scott Greer, Esq.
Lewis & Greer, P.C.
11 Raymond Avenue, P.O. Box 2990
Poughkeepsie, NY 12603
Email: jsgreer@lewisgreer.com
*Counsel for Defendant Family Services*

Jeffrey D. Fields, Esq.
Rivkin Radler, LLP
926 Rexcorp Plaza
Uniondale, NY 11556
Email: jeffrey.fields@rivkin.com
*Counsel for Defendant Family Services*